William J. Doyle (SBN 188069)
bill@doyleapc.com
Chris W. Cantrell (SBN 290874)
chris@doyleapc.com
DOYLE APC
550 West B Street, 4th Floor
San Diego, CA 92101
(619) 736-0000
(619) 736-1111 fax

Attorneys for Plaintiff McAlary

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBERT RANDALL MCALARY III, an individual,

Plaintiff,

v.

IGLOO PRODUCTS CORP., a Delaware corporation,

Defendant.

Case No. 25-at-00872

Complaint for Damages:

1. Strict Products Liability – Manufacturing Defect
2. Strict Products Liability – Design Defect
3. Strict Products Liability – Failure to Warn
4. Negligence
5. Breach of Implied Warranties
6. Negligent Infliction of Emotional Distress

JURY TRIAL DEMANDED

Plaintiff ROBERT RANDALL MCALARY III ("Plaintiff"), by and through his undersigned counsel, brings this Complaint for damages against Defendant IGLOO PRODUCTS CORP., a Delaware corporation, and alleges upon personal knowledge as to himself and upon information and belief as to all other matters, for injuries sustained due to a defective consumer product, as follows:

**PARTIES**

1. Plaintiff ROBERT RANDALL MCALARY III is, and at all times relevant herein was, a natural person and citizen of the United States residing in Woodland, California. Plaintiff is a resident of the State of California and resides within the Eastern District of California.

2. Defendant IGLOO PRODUCTS CORP. ("Igloo" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 777 Igloo Road, Katy, Texas 77494.

3. At all relevant times, Igloo designed, engineered, manufactured, assembled, marketed, distributed, and/or sold consumer coolers and related products under the "Igloo" brand name. Igloo placed its products into the stream of commerce with the expectation and intent that they would be sold nationwide, including in the State of California, through major retailers and online platforms. Igloo knew or reasonably should have known that its products would be purchased and used by consumers in California, including in this District.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Plaintiff Robert Randall McAlary III is a citizen and resident of California. Defendant Igloo Products Corp. is a Delaware corporation with its principal place of business in Katy, Texas. Complete diversity of citizenship exists between the parties.

6. This Court has personal jurisdiction over Defendant because it conducts substantial and systematic business within the State of California and this District, including placing products into the stream of commerce with the reasonable expectation that they will be purchased and used

in California. Defendant has purposefully availed itself of the benefits and protections of California law.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### Defect and Recall Background

8. Defendant Igloo Products Corp. is the manufacturer of the "Igloo 90 Quart Flip & Tow Rolling Cooler," a wheeled cooler equipped with a retractable tow handle designed for portability and consumer use.

9. On February 13, 2025, the United States Consumer Product Safety Commission ("CPSC") announced a nationwide recall of more than one million Igloo 90 Quart Flip & Tow Rolling Coolers due to the risk of fingertip amputation and crushing injuries. The initial recall cited at least 12 known injury incidents. In May 2025, the recall was expanded after Igloo received more than 78 additional injury reports, 26 of which involved serious harm such as amputations, fractures, or deep lacerations. The recall applied to multiple models manufactured between 2018 and December 2023.

10. The CPSC recall stated that the tow handle on the subject cooler posed a serious hazard, as it could pinch or trap a user's fingers against the cooler body, resulting in severe injuries, including amputations, fractures, and lacerations.

11. At the time of the initial recall in February 2025, Igloo had received at least 12 reports of fingertip injuries, including amputations. Following that, an expanded recall was issued in May 2025 after the company received an additional 78 injury reports, 26 of which involved amputations, bone fractures, or deep cuts.

12. The affected coolers were sold throughout the United States, including California, at major retailers such as Costco, Target, Academy, and Dick's Sporting Goods, as well as through online vendors like Amazon.com and Igloocoolers.com. The products retailed for approximately $80 to $140.

13. The subject cooler bore Costco Item Number 1356922, as confirmed by Plaintiff's purchase receipt and Costco's recall notification dated May 9, 2025, which identified this model as subject to recall due to a hazardous tow handle mechanism.

14. The recall notice explicitly marked the pinch point hazard using a diagram showing finger entrapment between the handle and cooler body, corroborating the likely mechanism of Plaintiff's injury.

15. The manufacturing defect centered on a hazardous mechanical interaction between the retractable tow handle and the cooler's main body, where fingers could be crushed or severed during ordinary handling or movement of the cooler.

16. Internal design revisions reportedly began as early as 2024, indicating that Igloo may have known of the defect while continuing to sell affected models through January 2025. Despite receiving multiple reports of severe injuries, no warnings or interim safety measures were provided to consumers prior to the recall.

17. According to the CPSC and Igloo's own public statements, consumers were advised to immediately stop using the recalled coolers and to contact Igloo for a free replacement handle. This confirms that Igloo acknowledged a dangerous defect in the design or manufacture of the product.

18. The risk posed by the cooler's tow handle was not disclosed to consumers prior to sale and was not obvious to ordinary users. Consumers such as Plaintiff were given no warning of the defect at the time of purchase or during use.

19. The recall issued by Defendant and the CPSC constitutes evidence that the product, when sold, contained a defective condition that made it unreasonably dangerous for its intended and foreseeable use.

**Plaintiff's Use and Injury**

20. Plaintiff Robert McAlary is a resident of Yolo County, California. On or about May 28, 2021, Plaintiff purchased the Igloo 90 Quart Flip & Tow Rolling Cooler from a Costco store located in Woodland, California. At the time of purchase, Plaintiff had no knowledge or notice of any defects in the cooler's design or manufacture.

21. On or about June 28, 2021, while camping at Yosemite National Park, Plaintiff Robert McAlary attempted to store the subject Igloo cooler in a bear-proof storage locker for the night.

22. At approximately 11:00 p.m., while maneuvering the cooler into position, Plaintiff's left index finger was forcefully caught and pinched by a concealed mechanical junction in the cooler, later associated with the tow handle assembly, causing immediate trauma. He immediately felt a sharp pulling sensation on his fingernail and withdrew his hand to find it covered in blood, with the tip of his finger torn open and tissue visibly missing. Only the nail remained attached. The injury resulted in severe bleeding and visible trauma consistent with partial amputation.

23. Family members on-site immediately called for emergency medical assistance.

24. At the time of the incident, Plaintiff believed the injury was accidental or the result of user error, and did not suspect that the cooler was defective. It was not until a national recall was issued by Igloo and the United States Consumer Product Safety Commission in February 2025, citing finger amputations caused by the cooler's retractable tow handle, that Plaintiff understood the true source of the injury. The recall confirmed that the cooler's design posed an unreasonable risk of severe finger injuries under normal and intended use.

25. The mechanical design of the cooler's tow handle allowed for a narrow pinch zone to form between the handle and cooler body during normal operation. This created a risk that users' fingers could be crushed or severed when the handle retracted or shifted under weight or uneven pressure, without any warning or visible hazard marking.

26. Upon information and belief, Defendant was aware of the hazardous design well before the February 2025 recall. Defendant had begun internal efforts to redesign the tow handle as early as 2024, indicating that it knew or should have known of the defect while continuing to market and sell the coolers without issuing any warnings to consumers. Despite accumulating injury reports, Defendant failed to notify users or provide interim guidance on safe use.

27. The injury resulted in the traumatic partial amputation of Plaintiff's left index finger, with tissue torn from the fingertip and only the nail remaining attached. Emergency responders were

called to the scene, and a paramedic asked Plaintiff, "Where is the rest of your finger?" His brother searched the area but was unable to locate the missing fingertip.

28. Plaintiff and his wife were driven by a family member to Mariposa Urgent Care, the nearest available medical facility. The clinic staff did not unwrap or examine the injury due to the severity and risk of infection. Instead, they referred Plaintiff directly to the emergency department at St. Agnes Medical Center in Fresno, California.

29. Plaintiff arrived at the emergency room at St. Agnes Medical Center in Fresno, where he was discharged around 8:00 a.m. and referred to a local orthopedic specialist for evaluation. The specialist informed Plaintiff that he was out-of-network under Plaintiff's insurance plan and could not proceed with treatment unless paid out-of-pocket. He advised Plaintiff to follow up with an in-network physician near his home in Woodland, California.

30. After leaving the orthopedic office in Fresno around 11:00 a.m., Plaintiff and his wife returned to Yosemite to pack up their belongings. Their daughter arranged for Plaintiff to be seen the following day by his general practitioner at Woodland Healthcare, who instructed him not to unwrap the dressing to avoid infection and referred him to a local orthopedic surgeon.

31. Upon evaluation, the orthopedic specialist concluded that the only viable treatment option was amputation of the finger to the level of the knuckle. The orthopedic surgeon advised that the finger could not be salvaged and would ultimately require surgical amputation. Plaintiff was offered the option to undergo surgery immediately or wait, but the outcome would not change. Surgery was scheduled for the next day.

32. The doctor counseled Plaintiff on risks of neuroma, infection, and additional surgeries. The procedure was performed under regional block anesthesia. Intraoperative findings confirmed bone exposure, tissue damage, and digital nerve compromise.

33. The amputation left Plaintiff with permanent disfigurement and functional limitations, including ongoing sensitivity at the amputation site, diminished grip strength, and cosmetic deformity.

34. Plaintiff returned the cooler to Costco on July 2, 2021, as shown in the sales audit refund receipt identifying Item #1356922 as a 'RECALLED ITEM DO NOT SELL.'

35. Plaintiff did not discover, and through the exercise of reasonable diligence could not have discovered, that the Igloo cooler was defective and unreasonably dangerous at the time of his injury. There was no publicly available evidence of the defective nature of the Igloo coolers until the February 2025 recall. Prior to that date, any information indicating the coolers were defective and unreasonably dangerous was solely in the possession of Defendant and was not accessible to Plaintiff. Plaintiff reasonably relied on the assumption that the product was safe for its intended use and had no reason to suspect that the cooler was the cause of his injury until learning of the product recall and its connection to injuries like his.

36. The recall was not issued until February 2025 and later expanded, confirming for the first time that Plaintiff's injury was caused by a known design defect. This is the earliest date on which Plaintiff became aware, or reasonably could have become aware through the exercise of reasonable diligence, of the defective nature of the Igloo cooler and its causal relationship to his injuries.

37. Accordingly, the statute of limitations was tolled until the date Plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the factual basis for his claims.

38. On information and belief, Defendant had knowledge of the defect in the Igloo cooler handles well before the February 2025 recall, including during a period in which it was actively working on a redesigned handle. Despite this knowledge, Defendant failed to disclose the defect to consumers or regulators, and continued to sell the product without warning. Defendant's concealment of the defect further delayed Plaintiff's discovery of the cause of his injury and provides an independent basis for tolling the applicable statute of limitations.

## COUNT I

### Strict Products Liability – Manufacturing Defect

39. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

40. Defendant Igloo Products Corp. designed, developed, manufactured, inspected, labeled, distributed, marketed, sold, and/or otherwise introduced the subject Igloo cooler into the stream of commerce.

41. The subject Igloo cooler was not reasonably safe for its intended use and was unreasonably dangerous due to one or more manufacturing defects. Specifically, the cooler deviated materially from Defendant's design specifications, manufacturing standards, and good manufacturing practices, rendering the product defective at the time it left Defendant's control.

42. The product's deviation from intended manufacturing specifications created an unreasonable risk of serious bodily injury, including the risk of amputation, to users such as Plaintiff.

43. The subject cooler experienced a catastrophic mechanical failure during foreseeable use as a result of one or more manufacturing defects, including but not limited to improper assembly, improper materials, or failure to meet applicable design tolerances.

44. At the time the product was purchased and used by Plaintiff, it was in a defective condition with respect to its manufacture. These defects were not known, knowable, or readily apparent to Plaintiff.

45. Plaintiff used the Igloo cooler in a manner that was intended and foreseeable by Defendant.

46. Defendant is aware that its coolers are widely distributed through major retailers and resellers, including but not limited to Costco, with the intent and expectation that they be used by ordinary consumers such as Plaintiff.

47. As a direct and proximate result of the cooler's defective manufacture, Plaintiff suffered a sudden and severe injury, including a traumatic amputation. A manufacturing defect or material flaw that allows a consumer cooler to sever a user's finger renders the product unreasonably dangerous.

48. The nature of the product failure gives rise to an inference of a manufacturing defect under applicable product liability law.

49. As a direct and proximate result of Defendant's manufacturing defect, Plaintiff suffered serious bodily injury, including partial amputation, pain, suffering, emotional distress, loss of enjoyment of life, and economic damages including but not limited to medical expenses and loss of income.

**COUNT II**

**Strict Products Liability – Design Defect**

50. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

51. The subject Igloo cooler was defectively designed and unreasonably dangerous for its intended and foreseeable use by consumers, including Plaintiff.

52. Reasonable and economically feasible alternative designs were available to prevent users' fingers from being pinched or crushed between the handle and the cooler body. These alternative designs would not have impaired the cooler's function and were known within the industry. Defendant failed to adopt or implement these safer designs despite knowledge of the risk.

53. At the time it was sold and when Plaintiff purchased and used it, the Igloo cooler contained a design defect that created an unreasonable risk of injury. Specifically, due to the defective design, the cooler failed to operate safely and effectively in a foreseeable and intended manner. Defendant failed to design the cooler to guard against the dangers posed by its tow handle under ordinary use.

54. The design defect existed at the time the cooler left Defendant's possession and was introduced into the stream of commerce.

55. Plaintiff's purchase and use of the Igloo cooler was the very type of use that Defendant intended and foresaw when designing and marketing the product.

56. Defendant expected and intended the subject Igloo cooler to reach consumers, including Plaintiff, without any substantial changes or modifications from the condition in which it was sold.

57. Due to its defective design, the cooler failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. The risks inherent in the product's design outweighed any purported benefits of that design.

58. The dangerous nature of the Igloo cooler's design was not open or obvious and could not have been reasonably detected by Plaintiff prior to use.

59. Defendant's defective design of the Igloo cooler was a substantial factor in causing Plaintiff's injuries, including but not limited to partial amputation, pain, emotional distress, out-of-pocket expenses, and other harm.

60. As a direct and proximate result of Defendant's defective design, Plaintiff suffered serious bodily injury, mental anguish, and economic losses, including medical expenses and lost income.

61. The injuries and damages suffered by Plaintiff were natural, probable, and foreseeable consequences of Defendant's failure to adopt a safer alternative design or adequately warn against the risks posed by the defective one.

**COUNT III**

**Strict Products Liability – Failure to Warn**

62. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

63. At all relevant times, Defendant Igloo Products Corp. was engaged in the design, manufacture, assembly, marketing, distribution, and sale of the subject Igloo 90 Quart Flip & Tow Rolling Cooler.

64. Defendant owed a duty to adequately warn consumers, including Plaintiff, of any known or reasonably knowable dangers associated with the use of its product, particularly those that were not obvious or apparent to ordinary users.

65. The subject cooler was sold without any warning, label, instruction, or safety notice regarding the risk of serious injury, including fingertip amputation or crushing, that could result from normal operation of the tow handle mechanism.

66. The danger posed by the tow handle was not open or obvious to an ordinary consumer. At the time Plaintiff purchased and used the cooler, the hazardous condition was latent and could not have been discovered through reasonable inspection.

67. Defendant knew or should have known of the substantial risk of injury associated with the tow handle mechanism before Plaintiff's injury occurred. Prior to the recall, Defendant had received multiple reports of injuries involving the same or similar cooler model.

68. Despite this knowledge, Defendant failed to take timely action to warn consumers, retailers, or the general public of the product's risks, and failed to issue a recall or corrective instruction until after Plaintiff's injury.

69. Defendant's failure to provide adequate warnings rendered the product defective and unreasonably dangerous for its intended and foreseeable use.

70. As a direct and proximate result of Defendant's failure to warn, Plaintiff suffered serious bodily injury, including the traumatic amputation of his finger, and continues to suffer pain, emotional distress, loss of enjoyment of life, medical expenses, and economic losses.

71. The harm suffered by Plaintiff was a natural, probable, and foreseeable consequence of Defendant's failure to provide adequate warnings about the product's known dangers.

**COUNT IV**

**Negligence**

72. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

73. Defendant Igloo Products Corp. is a corporation engaged in the business of designing, manufacturing, and selling consumer cooler products, including the 90 Quart Flip & Tow Rolling Cooler, to retailers and consumers throughout the United States.

74. On or about May 28, 2021, Plaintiff Robert McAlary purchased an Igloo cooler manufactured by Defendant from a Costco store located in Woodland, California.

75. Defendant owed a duty to exercise reasonable care in the design, manufacture, inspection, assembly, labeling, and sale of the subject Igloo cooler, so as to ensure the product was safe for its intended and reasonably foreseeable use by consumers, including Plaintiff.

76. Defendant's duty of care included adherence to applicable design and manufacturing specifications, compliance with good manufacturing practices, and conformity with industry standards and customs for consumer product safety.

77. Defendant breached its duty of care in one or more of the following ways: (a) negligently designing and/or manufacturing the subject cooler with a dangerous tow handle mechanism that posed a risk of crushing or amputating users' fingers; (b) failing to identify or correct

known safety hazards in the cooler's tow handle during product development, testing, or quality control; (c) failing to use appropriate materials or manufacturing methods to prevent hazardous operation of the handle; and (d) placing the cooler into the stream of commerce without adequate testing, inspection, or warnings.

78. On or about June 28, 2021, while using the Igloo cooler in a reasonable and foreseeable manner, Plaintiff Robert McAlary suffered a catastrophic finger amputation injury when the cooler's tow handle malfunctioned or failed during ordinary operation.

79. Defendant's negligence was a substantial factor in causing Plaintiff's injuries and damages, including severe physical trauma, pain and suffering, emotional distress, lost wages, and other economic and noneconomic losses.

80. As a direct and proximate result of Defendant's negligent acts and omissions, Plaintiff has sustained and continues to sustain substantial personal injury and related damages.

81. Defendant's decision to continue selling the cooler despite internal knowledge of the hazard, its delay in issuing a recall, and its failure to warn consumers about serious injury risks reflect a willful and conscious disregard for consumer safety. This conduct was carried out with oppression, fraud, or malice and justifies the imposition of punitive damages under California law.

82. Plaintiff's injuries were not caused or contributed to by any negligence or fault of Plaintiff Robert McAlary.

**COUNT V**

**Breach of Implied Warranties**

83. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

84. Defendant Igloo Products Corp. is a corporation engaged in the business of designing, manufacturing, and selling consumer coolers, including the Igloo 90 Quart Flip & Tow Rolling Cooler, to retailers and end-users throughout the United States.

85. On or about May 28, 2021, Plaintiff Robert McAlary purchased an Igloo cooler manufactured by Defendant from a Costco store located in Woodland, California.

86. Defendant is a merchant with respect to the sale of consumer coolers, including the subject product, within the meaning of California Commercial Code section 2104 and Civil Code section 1791(a).

87. Under California Civil Code section 1791.1(a), the sale of the Igloo cooler to Plaintiff carried with it an implied warranty of merchantability. Although the cooler was sold to Plaintiff by Costco, Plaintiff is an intended third-party beneficiary of the sale agreement between Costco and Defendant Igloo.

88. The implied warranty of merchantability guarantees, among other things, that the Igloo cooler would: (1) be fit for the ordinary purposes for which such goods are used, including the safe and reliable storage and transportation of food and beverages; and (2) be of a quality consistent with that of similar products generally available in the trade.

89. Defendant sold the Igloo cooler to Costco for the purpose of resale to end-users such as Plaintiff. Defendant was aware at all relevant times that Costco would resell the product to consumers, and Plaintiff was a foreseeable and intended third-party beneficiary of the distribution chain.

90. The subject Igloo cooler was defective and unfit for its ordinary purpose due to a hazardous defect in the tow handle mechanism, which created an unreasonable risk of physical injury when used in an ordinary and foreseeable manner.

91. These defects existed at the time the cooler left Defendant's possession and were present when the product was sold to Plaintiff.

92. On or about June 28, 2021, while Plaintiff Robert McAlary was using the Igloo cooler in a reasonable and foreseeable manner, the cooler's tow handle failed or malfunctioned, causing a catastrophic finger amputation injury.

93. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff suffered significant injuries and damages, including but not limited to physical injury, out-of-pocket expenses, lost wages, pain and suffering, emotional distress, and other compensable harm.

94. Plaintiff has provided, or hereby provides through this Complaint, reasonable notice to Defendant of the breach, as required by California Commercial Code section 2607(3)(A).

**COUNT VI**

**Negligent Infliction of Emotional Distress**

95. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

96. Defendant Igloo Products Corp. is a corporation engaged in the business of designing, manufacturing, and selling consumer coolers to retailers and end-users throughout the United States.

97. On or about May 28, 2021, Plaintiff purchased an Igloo cooler manufactured by Defendant from a Costco store located in Woodland, California.

98. Defendant owed a duty to exercise reasonable care in the design, manufacture, inspection, and sale of the Igloo cooler to ensure it was safe for its intended and foreseeable use.

99. Defendant breached this duty by negligently designing, manufacturing, and/or assembling the Igloo cooler with latent defects that made it prone to catastrophic crushing injuries, including amputation, particularly in connection with the tow handle mechanism.

100. On or about June 28, 2021, while operating the Igloo cooler in a normal, intended, and foreseeable manner, Plaintiff McAlary suffered a traumatic amputation injury when the tow handle failed.

101. As a direct and foreseeable result of the product's malfunction and the resulting physical injury, Plaintiff experienced and continues to experience significant emotional distress, including shock, anxiety, depression, and psychological trauma.

102. Plaintiff's emotional distress has manifested in physical symptoms, including but not limited to sleep disturbances, panic attacks, heightened anxiety, and persistent psychological suffering related to the traumatic loss.

103. Defendant's negligent conduct was a substantial factor in causing Plaintiff's emotional distress and related damages.

104. The emotional distress and mental anguish suffered by Plaintiff were natural, probable, and foreseeable consequences of Defendant's failure to use reasonable care in the design and manufacture of the Igloo cooler.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For general damages in an amount to be proven at trial, but in no event less than $75,000, exclusive of interest and costs;

B. For special damages, including but not limited to past and future medical expenses, lost wages, loss of earning capacity, and other out-of-pocket expenses, in an amount to be proven at trial;

C. For damages for pain and suffering, emotional distress, mental anguish, and loss of enjoyment of life, both past and future, in an amount to be determined at trial;

D. For economic damages, including but not limited to costs associated with travel, treatment, rehabilitation, and other reasonably foreseeable losses;

E. For punitive and exemplary damages in an amount sufficient to punish Defendant and to deter similar wrongful conduct in the future, as permitted by law;

F. For prejudgment interest as provided by law;

G. For costs of suit incurred herein;

H. For reasonable attorneys' fees, to the extent authorized by statute or applicable law; and

I. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: July 3, 2025

__s/ Chris W. Cantrell________
Chris W. Cantrell (SBN 290874)
chris@doyleapc.com
William J. Doyle (SBN 188069)
bill@doyleapc.com
**DOYLE APC**
550 West B. St., 4th Floor
San Diego, CA 92101
Telephone: (619) 736-0000
Facsimile: (619) 736-1111

Attorneys for Plaintiffs