William J. Doyle (SBN 188069)
bill@doyleapc.com
Chris W. Cantrell (SBN 290874)
chris@doyleapc.com
DOYLE APC
550 West B Street, 4th Floor
San Diego, CA 92101
(619) 736-0000
(619) 736-1111 fax

Attorneys for Plaintiff McAlary

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RANDALL MCALARY III,  an individual,<br><br>             Plaintiff,<br><br>        v.<br><br>IGLOO PRODUCTS CORP., a Delaware corporation,<br><br>             Defendant. | Case No. 2:25-cv-01904-JAM-CSK<br><br>First Amended Complaint for: (1) Strict Products Liability – Design Defect; and (2) Negligence<br><br><br>JURY TRIAL DEMANDED |

FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff ROBERT RANDALL MCALARY III ("Plaintiff"), by and through his undersigned counsel, brings this First Amended Complaint for damages against Defendant IGLOO PRODUCTS CORP., a Delaware corporation, and alleges upon personal knowledge as to himself and upon information and belief as to all other matters, for injuries sustained due to a defective consumer product, as follows:

**PARTIES**

1.      Plaintiff ROBERT RANDALL MCALARY III is, and at all times relevant herein was, a natural person and citizen of the United States residing in Woodland, California. Plaintiff is a resident of the State of California and resides within the Eastern District of California.

2.      Defendant IGLOO PRODUCTS CORP. ("Igloo" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 777 Igloo Road, Katy, Texas 77494.

3.      At all relevant times, Igloo designed, engineered, manufactured, assembled, marketed, distributed, and/or sold consumer coolers and related products under the "Igloo" brand name. Igloo placed its products into the stream of commerce with the expectation and intent that they would be sold nationwide, including in the State of California, through major retailers and online platforms. Igloo knew or reasonably should have known that its products would be purchased and used by consumers in California, including in this District.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Plaintiff Robert Randall McAlary III is a citizen and resident of California. Defendant Igloo Products Corp. is a Delaware corporation with its principal place of business in Katy, Texas. Complete diversity of citizenship exists between the parties.

6.      This Court has personal jurisdiction over Defendant because it conducts substantial and systematic business within the State of California and this District, including placing products into the stream of commerce with the reasonable expectation that they will be purchased and used

in California. Defendant has purposefully availed itself of the benefits and protections of California law.

7.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### Defect and Recall Background

8.    Defendant Igloo Products Corp. is the manufacturer of the "Igloo 90 Quart Flip & Tow Rolling Cooler," a wheeled cooler equipped with a retractable tow handle designed for portability and consumer use.

9.    On February 13, 2025, the United States Consumer Product Safety Commission ("CPSC") announced a nationwide recall of more than one million Igloo 90 Quart Flip & Tow Rolling Coolers due to the risk of fingertip amputation and crushing injuries. The initial recall cited at least 12 reported injury incidents. The recall applied to multiple models manufactured between 2018 and December 2023.

10.    The CPSC recall stated that the tow handle on the subject cooler posed a serious hazard, as it could pinch or trap a user's fingers against the cooler body, resulting in severe injuries, including amputations, fractures, and lacerations.

11.    In May 2025, the recall was expanded after Igloo received more than 78 additional injury reports, 26 of which involved serious harm such as amputations, fractures, or deep lacerations.

12.    The affected coolers were sold throughout the United States, including California, at major retailers such as Costco, Target, Academy, and Dick's Sporting Goods, as well as through online vendors like Amazon.com and Igloocoolers.com. The products retailed for approximately $80 to $140.

13.    The subject cooler bore Costco Item Number 1356922, as reflected in Costco's transaction records and Costco's recall notification dated May 9, 2025, which identified this model as subject to recall due to a hazardous tow handle mechanism.

14.    The recall notice explicitly marked the pinch point hazard using a diagram showing finger entrapment between the handle and cooler body, corroborating the likely mechanism of Plaintiff's injury.

15.    The design of the cooler's retractable tow handle created a hazardous pinch zone between the handle and the cooler's main body. During ordinary handling or movement of the cooler, this pinch zone allowed users' fingers to become trapped, crushed, or severed when the handle retracted or shifted under weight or pressure. Specifically, the original tow handle design provided insufficient space near the hinge and lacked protective ribbing, allowing fingers to become trapped between the handle and the cooler body during normal operation.

16.    Defendant ultimately developed a redesigned replacement handle that was offered to consumers through the recall. The redesigned replacement handle incorporated increased space near the hinge along with enhanced plastic ribbing to eliminate the pinch zone hazard. The warning accompanying the replacement handle kit stated: 'DO NOT USE COOLER UNTIL YOU REPLACE HANDLE. MOVING PARTS CAN CRUSH OR EVEN AMPUTATE FINGERTIPS.' The existence and specific design changes of this redesign confirm that a safer alternative was feasible, available, and acknowledged by Defendant as necessary to address the amputation and crushing risk inherent in the original design.

17.    According to the CPSC and Igloo's own public statements, consumers were advised to immediately stop using the recalled coolers and to contact Igloo for a free replacement handle. Igloo's decision to offer a free redesigned replacement handle is consistent with a recognition that the original tow handle design posed an unreasonable risk of serious injury during normal use.

18.    The pinch zone hazard created by the cooler's tow handle design was not visible or apparent to ordinary consumers during normal use. The defect was latent and could not have been discovered through reasonable inspection of the product.

19.    The recall is consistent with and supportive of the conclusion that the cooler, as designed and sold, contained a defective condition that made it unreasonably dangerous for its intended and foreseeable use.

FIRST AMENDED COMPLAINT FOR DAMAGES

**Plaintiff's Use and Injury**

20.    Plaintiff Robert McAlary is a resident of Yolo County, California. On or about May 28, 2021, Plaintiff purchased the Igloo 90 Quart Flip & Tow Rolling Cooler from a Costco store located in Woodland, California. At the time of purchase, Plaintiff had no knowledge or notice of any defects in the cooler's design or manufacture.

21.    On or about June 28, 2021, while camping at Yosemite National Park, Plaintiff and his family had stored the subject Igloo cooler inside a bear-proof storage locker for the night. Later that evening, a family member brought items that needed to be placed in the cooler, and Plaintiff returned to the bear-proof locker to retrieve it.

22.    At approximately 11:00 p.m., while attempting to remove the cooler from the bear-proof storage locker, in which the cooler barely fit, Plaintiff's left hand became stuck. In the darkness, Plaintiff reached around the back of the locker to try to free his hand, but felt a sharp pulling sensation on his fingernail and stopped. His hand remained trapped. When Plaintiff attempted to pull his hand free a second time, it released, but the tip of his left index finger had been torn open, with tissue visibly missing and only the nail remaining attached. The injury, later determined to be associated with the cooler's tow handle assembly, resulted in severe bleeding and visible trauma consistent with partial amputation.

23.    Family members on-site immediately called for emergency medical assistance.

24.    At the time of the incident, Plaintiff reasonably believed his injury was caused by the bear-proof storage locker, not the cooler. The locker was a tight-fitting metal enclosure with hard edges, and the cooler barely fit inside it. In the darkness, Plaintiff could not see the mechanism that trapped his hand and reasonably attributed the injury to having caught his finger on a sharp edge or pinch point within the metal locker. Nothing about the cooler's appearance or design suggested to Plaintiff, or would have suggested to any reasonable consumer, that the cooler was capable of amputating a finger. No warnings, markings, or visible hazards on the cooler indicated any risk of such injury. It was not until the national recall was announced in February 2025, citing finger amputations caused by the cooler's retractable tow handle, that Plaintiff first learned the cooler's design posed a risk of the type of injury he had sustained.

25.    The injury resulted in the traumatic partial amputation of Plaintiff's left index finger. Emergency responders were called to the scene, and a paramedic asked Plaintiff, 'Where is the rest of your finger?' His brother searched the area but was unable to locate the missing fingertip.

26.    Plaintiff and his wife were driven by a family member to Mariposa Urgent Care, the nearest available medical facility. The clinic staff did not unwrap or examine the injury due to the severity and risk of infection. Instead, they referred Plaintiff directly to the emergency department at St. Agnes Medical Center in Fresno, California.

27.    Plaintiff arrived at the emergency room at St. Agnes Medical Center in Fresno, where he was discharged around 8:00 a.m. and referred to a local orthopedic specialist for evaluation. The specialist informed Plaintiff that he was out-of-network under Plaintiff's insurance plan and could not proceed with treatment unless paid out-of-pocket. He advised Plaintiff to follow up with an in-network physician near his home in Woodland, California.

28.    After leaving the orthopedic office in Fresno around 11:00 a.m., Plaintiff and his wife returned to Yosemite to pack up their belongings. Their daughter arranged for Plaintiff to be seen the following day by his general practitioner at Woodland Healthcare, who instructed him not to unwrap the dressing to avoid infection and referred him to a local orthopedic surgeon.

29.    Upon evaluation, the orthopedic specialist concluded that the only viable treatment option was amputation of the finger to the level of the knuckle. The orthopedic surgeon advised that the finger could not be salvaged and would ultimately require surgical amputation. Plaintiff was offered the option to undergo surgery immediately or wait, but the outcome would not change. Surgery was scheduled for the next day.

30.    The doctor counseled Plaintiff on risks of neuroma, infection, and additional surgeries. The procedure was performed under regional block anesthesia. Intraoperative findings confirmed bone exposure, tissue damage, and digital nerve compromise.

31.    The amputation left Plaintiff with permanent disfigurement and functional limitations, including ongoing sensitivity at the amputation site, diminished grip strength, and cosmetic deformity.

32.     Plaintiff returned the cooler to Costco on July 2, 2021. Plaintiff returned the cooler because it was too large to fit properly in bear-proof storage lockers commonly used at campsites, not because of any suspected defect or belief that the cooler was the cause of his injury. Costco processed the return without inquiry. No recall of the cooler existed at the time of the return, and no recall-related language appeared on the original transaction. Plaintiff did not retain a copy of the original return receipt. A reprinted copy of the transaction record obtained from Costco in 2025, after the recall had been announced, bears the notation 'RECALLED ITEM DO NOT SELL,' which reflects Costco's updated system records and was not present at the time of the 2021 return.

33.     Plaintiff did not discover, and through the exercise of reasonable diligence could not have discovered, that the Igloo cooler was defective and unreasonably dangerous at the time of his injury. As set forth above, Plaintiff reasonably believed his injury was caused by the bear-proof storage locker based on the circumstances of the incident, including the darkness, the tight fit of the cooler within the metal locker, and the absence of any visible indication that the cooler could cause such an injury. Plaintiff's belief that the bear-proof storage locker, and not the cooler, caused his injury was objectively reasonable under the circumstances and remained consistent and unchallenged from the date of the incident through February 2025, when the CPSC recall first revealed the hazard posed by the cooler's tow handle design.

34.     There was no publicly available information prior to the February 2025 recall suggesting the cooler's tow handle design posed any risk of amputation or crushing. Indeed, on June 29, 2022, Plaintiff and his wife purchased the same model cooler, which they would not have done had they harbored any suspicion that the product was defective.

35.     Prior to the recall, any information indicating that the cooler's tow handle design created a risk of amputation or crushing injuries was not publicly available and was not accessible to Plaintiff. Plaintiff first discovered the factual basis for his claims in February 2025 upon learning of the CPSC recall and its description of the cooler's tow handle as the cause of fingertip amputation and crushing injuries matching his own.

36.     The recall was not issued until February 2025 and later expanded, revealing for the first time publicly that the cooler's tow handle design posed a risk of fingertip amputation and

crushing injuries. This is the earliest date on which Plaintiff became aware, or reasonably could have become aware through the exercise of reasonable diligence, that (1) the Igloo cooler was defective, or (2) that the cooler's design, rather than the bear-proof storage locker, was the cause of his injury. Moreover, even assuming Plaintiff had suspected the cooler was the cause of his injury, no investigation reasonably available to a consumer at any point prior to the February 2025 recall would have revealed the existence of the design defect or any basis for a claim against Defendant, as no such information was publicly available.

37.    At no point between the date of Plaintiff's injury and the February 2025 recall was there any publicly available information, including any consumer alert, safety notice, recall, media report, or regulatory action, indicating that the Igloo 90 Quart Flip & Tow Rolling Cooler posed a risk of finger amputation or crushing injuries. No reasonable investigation by Plaintiff could have uncovered the defect in the cooler's tow handle design, as that information was known only to Defendant and was not disclosed to the public, regulators, or consumers until the 2025 recall. Only the February 2025 recall made it possible for Plaintiff, or any consumer, to connect the cooler's tow handle design to the type of injury Plaintiff had sustained.

38.    The cooler's retractable tow handle appeared to be a standard feature common to wheeled consumer coolers. Nothing about its external appearance, construction, or operation would alert an ordinary consumer to the presence of a concealed amputation hazard.

39.    Accordingly, the statute of limitations was tolled until the date Plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the factual basis for his claims.

**COUNT I**

**Strict Products Liability – Design Defect**

40.    Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

41.    The subject Igloo cooler was defectively designed and unreasonably dangerous for its intended and foreseeable use by consumers, including Plaintiff. Specifically, the design of the cooler's retractable tow handle created a pinch zone between the handle and the cooler body that

7

FIRST AMENDED COMPLAINT FOR DAMAGES

allowed users' fingers to become trapped, crushed, or severed during ordinary handling or movement of the cooler.

42.    Reasonable and economically feasible alternative designs were available to prevent users' fingers from being pinched or crushed between the handle and the cooler body. These alternative designs would not have impaired the cooler's function and were known within the industry. Defendant ultimately developed and offered a redesigned replacement handle through the 2025 recall, confirming the feasibility of a safer alternative.

43.    At the time it was sold and when Plaintiff purchased and used it, the Igloo cooler contained a design defect that created an unreasonable risk of injury. The tow handle's design allowed a narrow pinch zone to form between the handle and the cooler body, which could trap and sever a user's fingers when the handle retracted or shifted under weight or pressure during normal use, such as lifting, carrying, or maneuvering the cooler. Plaintiff's injury is consistent with the pinch zone mechanism identified in the CPSC recall. Plaintiff's finger became trapped between the tow handle and the cooler body while maneuvering the cooler under conditions of weight and pressure, which is the precise hazard the recall identified. Due to this defective design, the cooler failed to operate safely and effectively in a foreseeable and intended manner. Defendant failed to design the cooler to guard against the dangers posed by its tow handle under ordinary use.

44.    The design defect existed at the time the cooler left Defendant's possession and was introduced into the stream of commerce.

45.    Plaintiff's purchase and use of the Igloo cooler was the very type of use that Defendant intended and foresaw when designing and marketing the product.

46.    Defendant expected and intended the subject Igloo cooler to reach consumers, including Plaintiff, without any substantial changes or modifications from the condition in which it was sold.

47.    Under the consumer expectations test, the cooler failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. An ordinary consumer would not expect that a cooler's retractable tow handle could trap, crush, or sever a finger during normal handling. The pinch zone hazard was concealed within the handle

mechanism, was not visible or apparent during use, and presented a risk far exceeding the minimum safety expectations of any reasonable consumer. This expectation of safety was further reinforced by Defendant's own marketing of the tow handle as a 'comfort-grip swing-up rear handle' that 'reduces towing force by up to 50% for easy pulling.' An ordinary consumer reading this marketing language would understand the tow handle to be a convenience feature designed for comfortable, easy use, not a mechanism capable of amputating a finger.

48.    The dangerous nature of the Igloo cooler's design was not open or obvious and could not have been reasonably detected by Plaintiff prior to use.

49.    Defendant's defective design of the Igloo cooler was a substantial factor in causing Plaintiff's injuries, including but not limited to partial amputation, pain, emotional distress, out-of-pocket expenses, and other harm.

50.    As a direct and proximate result of Defendant's defective design, Plaintiff suffered serious bodily injury, mental anguish, and economic losses, including medical expenses and lost income.

51.    The injuries and damages suffered by Plaintiff were natural, probable, and foreseeable consequences of the defective design of the cooler's tow handle.

## COUNT II

### Negligence

52.    Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

53.    Defendant Igloo Products Corp. is a corporation engaged in the business of designing, manufacturing, and selling consumer cooler products, including the 90 Quart Flip & Tow Rolling Cooler, to retailers and consumers throughout the United States.

54.    On or about May 28, 2021, Plaintiff Robert McAlary purchased an Igloo cooler manufactured by Defendant from a Costco store located in Woodland, California.

55.    Defendant owed a duty to exercise reasonable care in the design, manufacture, inspection, assembly, and sale of the subject Igloo cooler, so as to ensure the product was safe for its intended and reasonably foreseeable use by consumers, including Plaintiff.

FIRST AMENDED COMPLAINT FOR DAMAGES

56.   Defendant's duty of care included adherence to applicable design and manufacturing specifications, compliance with good manufacturing practices, and conformity with industry standards and customs for consumer product safety.

57.   Defendant breached its duty of care in one or more of the following ways: (a) failing to identify or correct the hazardous pinch zone in the cooler's tow handle during product development, testing, or quality control; (b) failing to adopt a safer alternative tow handle design that was economically and technically feasible and would not have impaired the cooler's functionality; (c) placing the cooler into the stream of commerce without adequate testing or inspection; and (d) negligently designing the tow handle with a concealed pinch zone between the handle and cooler body that created an unreasonable risk of finger amputation or crushing during normal use.

58.   On or about June 28, 2021, while using the Igloo cooler in a reasonable and foreseeable manner, Plaintiff Robert McAlary suffered a catastrophic finger amputation injury when his finger became trapped in the hazardous pinch zone between the cooler's tow handle and body during ordinary operation.

59.   Defendant's negligence was a substantial factor in causing Plaintiff's injuries and damages, including severe physical trauma, pain and suffering, emotional distress, lost wages, and other economic and noneconomic losses.

60.   As a direct and proximate result of Defendant's negligent acts and omissions, Plaintiff has sustained and continues to sustain substantial personal injury and related damages.

61.   Plaintiff's injuries were not caused or contributed to by any negligence or fault of Plaintiff Robert McAlary.

62.   As a direct and foreseeable result of Defendant's negligence and Plaintiff's resulting physical injury, Plaintiff has experienced and continues to experience significant emotional distress, including shock, anxiety, depression, and psychological trauma. Plaintiff's emotional distress has manifested in physical symptoms, including but not limited to sleep disturbances, panic attacks, heightened anxiety, and persistent psychological suffering related to the traumatic loss of his finger.

These emotional and psychological injuries are natural, probable, and foreseeable consequences of the traumatic amputation caused by Defendant's negligently designed product.

**DEMAND FOR RELIEF**

A.    WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

B.    For general damages in an amount to be proven at trial, but in no event less than $75,000, exclusive of interest and costs;

C.    For special damages, including but not limited to past and future medical expenses, lost wages, loss of earning capacity, and other out-of-pocket expenses, in an amount to be proven at trial;

D.    For damages for pain and suffering, emotional distress, mental anguish, and loss of enjoyment of life, both past and future, in an amount to be determined at trial;

E.    For economic damages, including but not limited to costs associated with travel, treatment, rehabilitation, and other reasonably foreseeable losses;

F.    For prejudgment interest as provided by law;

G.    For costs of suit incurred herein;

H.    For reasonable attorneys' fees, to the extent authorized by statute or applicable law; and

I.    For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: March 19, 2026

William J. Doyle (SBN 188069)
bill@doyleapc.com
Chris W. Cantrell (SBN 290874)
chris@doyleapc.com
DOYLE APC
550 West B Street, 4th Floor
San Diego, CA 92101
(619) 736-0000
(619) 736-1111 fax

*Attorneys for Plaintiff*

11
FIRST AMENDED COMPLAINT FOR DAMAGES