UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RANDALL MCALARY III, an individual,<br>Plaintiff,<br>v.<br>IGLOO PRODUCTS CORP., a Delaware corporation,<br>Defendant. | No. 2:25-cv-01904-JAM-CSK<br><br>**ORDER DENYING MOTION TO DISMISS** |

Plaintiff Robert Randall McAlary III alleges his finger was pinched and severely injured by an Igloo-brand cooler in 2021 while removing the cooler from a bear-proof storage locker. While Plaintiff believed his injury was caused by the bear-proof storage locker at the time, following a recall of the cooler in 2025 for similar finger injuries, Plaintiff now alleges that the accident was caused by a design defect of the cooler, and asserts claims for strict products liability and negligence as a result.

The Court previously dismissed Plaintiff's claims, finding they were untimely on their face and that Plaintiff had failed to

adequately plead any tolling of the statute of limitations. Plaintiff has now amended his claims, alleging they are timely under the delayed discovery doctrine. Defendant Igloo Products Corp. moves to dismiss Plaintiff's claims, arguing that Plaintiff fails to adequately plead tolling under the delayed discovery doctrine and that he insufficiently pleads causation.

As discussed below, the Court finds that Plaintiff's claims are timely and adequately pled. Thus, the Court denies dismissal of Plaintiff's claims.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The factual background of this case is well known to the Parties and is also set forth in this Court's prior Order granting dismissal of Plaintiff's Complaint. Order at 2-3, ECF No. 26. The Court will address Plaintiff's amended allegations in more detail as required below.

Plaintiff filed suit on July 7, 2025, alleging six causes of action for (1) Strict Products Liability – Manufacturing Defect; (2) Strict Products Liability – Design Defect; (3) Strict Products Liability – Warning Defect; (4) Negligence; (5) Breach of Implied Warranties; and (6) Negligent Infliction of Emotional Distress. ECF No. 1. The Court dismissed these claims on March 2, 2026, finding that Plaintiff's claims were untimely on the face of the Complaint, and that Plaintiff failed to adequately plead tolling under either the delayed discovery doctrine or the fraudulent concealment doctrine. Order at 4-10.

Plaintiff filed his operative First Amended Complaint on March 19, 2026, alleging two causes of action for (1) Strict Products Liability – Design Defect; and (2) Negligence. First

Am. Compl. ("FAC") ¶¶ 40-62, ECF No. 27. Defendant moved to dismiss Plaintiff's claims on April 29, 2026. Mot., ECF No. 33. The matter is fully briefed and was submitted without oral argument pursuant to Local Rule 230(g). Opp'n, ECF No. 34; Reply, ECF No. 35; ECF No. 36.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The court assumes all factual allegations are true and "construe[s] them in the light most favorable to the nonmoving party." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995) (citing Everest & Jennings, Inc. v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994)). That said, if the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. Iqbal, 556 U.S. at 678. In the same vein, conclusory or "formulaic recitation[s] of the elements" do not

alone suffice. Id. (internal quotations and citations removed). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. OPINION

A. Sanctions

As a preliminary matter, the Court notes that Plaintiff's Opposition is 19 pages in violation of this Court's Order re Filing Requirements that memoranda of law in opposition to motions to dismiss "are limited to fifteen (15) pages." ECF No. 3-2. Thus, the Court will impose monetary sanctions of $50.00 for each page over that limit, or $200.00, against Plaintiff.

B. Plaintiff Adequately Pleads Tolling Under the Delayed Discovery Doctrine

Plaintiff's strict liability and negligence claims are subject to a two-year statute of limitations under California Code of Civil Procedure section 335.1. See Jorden v. Covidien, LP, No. C 19-05709 WHA, 2019 WL 6327373, at *1 (N.D. Cal. Nov. 26, 2019). However, Plaintiff did not commence this lawsuit until July 7, 2025, more than two years after his alleged injury occurred on June 28, 2021. See Order at 6. Thus, Plaintiff's claims are untimely absent tolling.

This Court previously dismissed Plaintiff's claims as untimely, finding that Plaintiff had failed to plead tolling under either the delayed discovery doctrine or fraudulent concealment doctrine. Id. at 6-10. In particular, the Court found Plaintiff could not invoke the delayed discovery rule

because the Complaint was "entirely silent as to Plaintiff's reasonable diligence following his accident, i.e., any efforts to investigate the cause of his injury after it occurred," and the facts "strongly indicate[ed] Plaintiff suspected or at least had reason to suspect wrongdoing" at the time of his injury because "Plaintiff allege[d] he was severely injured by the Cooler while camping, needed urgent medical care, ultimately had his finger partially amputated, and returned the Cooler to Costco just four days later." Id. at 8. The Court granted Plaintiff leave to amend these deficiencies. Id. at 10.

In the First Amended Complaint, Plaintiff again alleges that his claims are timely under the delayed discovery doctrine.[1] Notably, Plaintiff now alleges that he was injured at approximately 11:00 p.m. while camping when he attempted to remove the cooler from a bear-proof storage locker in which the cooler barely fit. FAC ¶ 22. Plaintiff's left hand became stuck and, "[i]n the darkness, Plaintiff reached around the back of the locker to try to free his hand, but felt a sharp pulling sensation on his fingernail and stopped." Id. "When Plaintiff attempted to pull his hand free a second time, it released, but the tip of his left index finger had been torn open, with tissue visibly missing and only the nail remaining attached." Id. At the time of the incident, Plaintiff "reasonably believed his injury was caused by the bear-proof storage locker, not the cooler" as, "[i]n the darkness, Plaintiff could not see the mechanism that trapped his hand and reasonably attributed the

---

[1] Plaintiff does not invoke the fraudulent concealment doctrine in the First Amended Complaint.

injury to having caught his finger on a sharp edge or pinch point within the metal locker." Id. ¶ 24. Plaintiff alleges that "[n]othing about the cooler's appearance or design suggested to Plaintiff, or would have suggested to any reasonable consumer, that the cooler was capable of amputating a finger." Id.

Following Plaintiff's injury, Plaintiff returned the cooler to Costco on July 2, 2021, "because it was too large to fit properly in bear-proof storage lockers commonly used at campsites, not because of any suspected defect or belief that the cooler was the cause of his injury." Id. ¶ 32. "[O]n June 29, 2022, Plaintiff and his wife purchased the same model cooler, which they would not have done had they harbored any suspicion that the product was defective." Id. ¶ 34. Plaintiff first discovered the factual basis for his claims in February 2025 when a recall notice for the cooler was issued citing finger amputations caused by the cooler's retractable tow handle. Id. ¶¶ 24, 35. "Prior to the recall, any information indicating that the cooler's tow handle design created a risk of amputation or crushing injuries was not publicly available and was not accessible to Plaintiff," and "[n]o reasonable investigation by Plaintiff could have uncovered the defect in the cooler's tow handle design, as that information was known only to Defendant and was not disclosed to the public, regulators, or consumers until the 2025 recall." Id. ¶¶ 35, 37.

Defendant argues that these amended allegations do not save Plaintiff's claims. "Just as before, Plaintiff knew he was severely injured while maneuvering his Cooler inside a locker, needed urgent medical care, ultimately had his finger partially

amputated, and returned the Cooler to Costco just four days later." Mot. at 6. "These facts alone would give a reasonable person reason to suspect that the injury was wrongfully caused such that Plaintiff was under a duty to investigate *all potential causes of his injury* at the time it occurred." Id. (emphasis in original). "Yet, as before, Plaintiff does not plead that he made 'any efforts to investigate the cause of his injury after it occurred, until the recall notice was issued in February 2025.'" Id. at 7. Defendant argues that this failure to plead any diligent investigation weighs in favor of dismissal.

In opposition, Plaintiff argues that he has adequately pled tolling under the delayed discovery doctrine, as he has plausibly pled that he did not suspect the cooler was the cause of his injury at the time, and that a reasonable person in Plaintiff's circumstances would have attributed the injury to the bear-proof storage locker, not the cooler. Opp'n at 4-5. Further, Plaintiff argues even a diligent investigation in 2021 would not have uncovered the defect in the cooler, as that defect was not publicly disclosed until 2025. Id. at 6-8.

The Court finds that Plaintiff has sufficiently pled tolling under the delayed discovery doctrine at this stage. As the Court previously explained, "California law recognizes a general, rebuttable presumption, that plaintiffs have 'knowledge of the wrongful cause of an injury.'" Grisham v. Phillip Morris U.S.A., Inc., 40 Cal. 4th 623, 638 (2007) (quoting Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005)). One manner of rebutting this presumption is the discovery rule, which "delays accrual until the plaintiff has, or should have, inquiry notice

of the cause of action." Fox, 35 Cal. 4th at 807. "In order to rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Id. at 808 (citation and internal quotation marks omitted).

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110 (1988). "This rule sets forth two alternate tests for triggering the limitations period: (1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing . . . . The first to occur under these two tests begins the limitations period." Kitzig v. Nordquist, 81 Cal. App. 4th 1384, 1391 (2000). Once a plaintiff suspects that an injury has been wrongfully caused, they must "conduct a reasonable investigation of all potential causes of that injury." Fox, 35 Cal. 4th at 808.

The Court finds Plaintiff's amended allegations sufficiently invoke the discovery rule for two reasons. First, as Plaintiff argues, the duty to investigate is "triggered by suspicion that [an] injury was wrongfully caused, not merely that an injury occurred." Opp'n at 11. California courts have explained that

the discovery rule's accrual trigger, suspicion of wrongdoing, uses the term "wrong . . . in accordance with its 'lay understanding.'" Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999) (quoting Jolly, 44 Cal. 3d at 1110). Here, Plaintiff plausibly pleads that, at the time of his injury, he attributed his finger injury to the metal bear-proof storage locker's sharp edges rather than a defect with the cooler because, in the darkness, he could not see his finger was trapped by the cooler, and the cooler's defect was concealed. FAC ¶ 24. As Plaintiff alleges "[n]othing about the cooler's appearance or design suggested to Plaintiff, or would have suggested to any reasonable consumer, that the cooler was capable of amputating a finger." Id. Construing these allegations in Plaintiff's favor, as the Court must at this stage, this begs the question then of whether Plaintiff, or another reasonable person, would consider injury by the bear-proof storage locker to be "wrongful," thereby triggering Plaintiff's duty to investigate his injury. Where the discovery rule is invoked however, questions of when a plaintiff suspected or should have suspected wrongdoing, and whether reasonable diligence could have revealed the cause of action, are normally questions of fact for the jury. See Fox, 35 Cal. 4th at 810-11; E-Fab, Inc. v. Accountants, Inc. Servs., 153 Cal. App. 4th 1308, 1320 (2007). The Court declines to resolve the question of whether Plaintiff, or another reasonable person, would consider injury by a bear-proof storage locker to be "wrongful" at this early stage. Thus, the Court finds that Plaintiff has plausibly pled he was not on notice of any "wrongful" injury in 2021.

Second, even when the duty to investigate applies (i.e., when there is a suspicion that the cooler caused the injury and that the defect resulted from wrongdoing), the statute of limitations begins to run only if a reasonable investigation would have revealed the defect. See Fox, 35 Cal. 4th at 803 (noting the delayed discovery rule still applies if the plaintiff "pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action"). As noted above, Plaintiff alleges, even if he had attempted to investigate the cooler in 2021, that no consumer investigation could have revealed the cooler's defect, as all material information was concealed within the product and held exclusively by Defendant until the recall was issued in 2025. FAC ¶¶ 33-37.

Here, given that Plaintiff has pled he was not on notice of a "wrongful" injury by the cooler in 2021, and that any investigation into the cooler at that time would have been futile, the Court finds that Plaintiff has plausibly pled tolling under the delayed discovery doctrine at this stage. Thus, the Court declines to dismiss Plaintiff's claims as untimely.

C. Plaintiff Adequately Pleads Causation

Defendant argues that, even if the Court "declines to dismiss Plaintiff's claims as time-barred, the newfound allegations he raises in an attempt to invoke the discovery rule necessarily defeat his allegations of causation as a matter of law." Mot. at 7. Notably, Defendant argues that Plaintiff, who "never saw that the Cooler's tow handle was responsible for his injury nor did he previously believe it was responsible,"

abruptly changed his mind when the recall notice was issued and now alleges that his injury occurred when his finger became trapped between the tow handle and cooler body. Id. at 8. Because Plaintiff changed his mind based on the recall notice and "without any additional information about the circumstances surrounding his particular injury," Defendant argues that Plaintiff's allegations are speculative and fall well short of satisfying the plausibility standard. Id. at 8-9.

The Court disagrees. Under California law, "[a] product liability case must be based on substantial evidence establishing both the defect and causation (a substantial probability that the design defect, and not something else, caused the plaintiff's injury)[.]" Stephen v. Ford Motor Co., 134 Cal. App. 4th 1363, 1373 (2005)). Thus, a plaintiff advancing a design defect claim must "plausibly plead facts that, if true, would establish 'a causal relationship [cause in fact] between the defect and the injury.'" Taft v. Nabisco, No. CV 15-2685 DSF (MRWx), 2015 WL 12819144, at *1 (C.D. Cal. June 4, 2015), aff'd, 675 F. App'x 796 (9th Cir. 2017) (quoting Visueta v. Gen. Motors Corp., 234 Cal. App. 3d 1609, 1616 (1991)).

Here, Plaintiff alleges that the cooler which caused his injury has a design defect which creates a "pinch zone between the handle and the cooler body" that "allow[s] users' fingers to become trapped, crushed, or severed when the handle retract[s] or shift[s] under weight or pressure" during ordinary handling. FAC ¶¶ 15, 41. Plaintiff experienced that type of injury in 2021 when his "finger became trapped between the tow handle and the cooler body while maneuvering the cooler under conditions of

weight and pressure," and that "the tip of his left index finger [was] torn open, with tissue visibly missing and only the nail remaining attached," ultimately requiring surgical amputation at the knuckle. Id. ¶ 22, 29, 43. That type of finger injury was also the precise hazard that provoked the 2025 recall of the cooler, as the recall identified the cooler's defect as one capable of producing "fingertip amputation and crushing injuries." Id. ¶¶ 9, 43. Defendant's own redesign and warnings confirmed the defect's nature, as Defendant developed and offered a redesigned replacement handle through the recall, which "incorporated increased space near the hinge along with enhanced plastic ribbing to eliminate the pinch zone hazard." Id. ¶ 16. The warning accompanying the recall's replacement-handle kit stated: "DO NOT USE COOLER UNTIL YOU REPLACE HANDLE. MOVING PARTS CAN CRUSH OR EVEN AMPUTATE FINGERTIPS." Id. Based on these facts, Plaintiff alleges that the cooler's defective design caused his finger injury. Id. ¶¶ 49, 59.

Defendant makes much of the fact that Plaintiff initially believed his injury was caused by the bear-proof storage locker and only changed his mind when the recall notice was issued. However, Plaintiff plausibly alleges that, at the time the injury occurred, he could not visually identify the mechanism that trapped his hand and reasonably attributed his injury to "a sharp edge or pinch point within the metal locker" rather than a plastic cooler with round, dull edges. Id. ¶¶ 22, 24. The cooler's pinch zone hazard that caught Plaintiff's hand was concealed within the handle mechanism and was not visible or apparent during use. Id. ¶¶ 22, 47. It was not until the recall

was issued that Plaintiff learned that the cooler's tow handle had a documented design defect causing the precise type of injury he sustained. Id. ¶¶ 33-37. On the basis of the recall information, his injury pattern, the part of his hand that was injured, his physical recollection of where his hand was when it became trapped, and the part of the cooler at that location, Plaintiff now alleges that the tow-handle pinch zone caused his injury. Id. ¶¶ 22, 43.

Based on these allegations, the Court finds that Plaintiff has plausibly alleged that the cooler's design defect caused his injury. Accordingly, the Court declines to dismiss Plaintiff's claims on that basis.

## IV. ORDER

For the reasons above, Defendant's Motion to Dismiss (ECF No. 33) is DENIED. Defendant shall file its Answer to the First Amended Complaint within twenty (20) days of this Order. Finally, Counsel for Plaintiff is ordered to pay $200 to the clerk of court no later than August 31, 2026.

IT IS SO ORDERED.

Dated: August 19, 2026

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE